```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION at LEXINGTON**

```
DONNA CHAMBERS,              )
                             )
                             )  Civil Action No. 5:07-135-JMH
       Plaintiff,            )
                             )
v.                           )
                             )
                             )  MEMORANDUM OPINION AND ORDER
E.W. JAMES & SONS, INC.,     )
                             )
       Defendant.            )
```

        \*\*    \*\*    \*\*    \*\*    \*\*

This matter is before the Court on Defendant's Motion for Summary Judgment [Record No. 15]. Plaintiff has filed a Response in opposition [Record No. 18], and Defendant E.W. James & Sons, Inc. (hereinafter, "E.W. James") has filed a Reply in support of their motion [Record No. 24]. Defendant has also filed a Motion to Strike Plaintiff's Exhibits Offered in Opposition to Summary Judgment [Record No. 23]. The time for response has expired, and Plaintiff has not made any objection thereto. These motions are now ripe for decision.

**I.   DEFENDANT'S MOTION TO STRIKE**

E.W. James asks the Court to strike from the record those exhibits offered by Plaintiff in opposition to Defendant's motion for summary judgment. Specifically, Defendant argues that, since Chambers failed to produce any of the initial disclosure required

under Fed. R. Civ. P. 26(a)(1), her exhibits must be excluded from consideration by operation of Fed. R. Civ. P. 37(c)(1). The Court agrees.

Rule 26(a)(1)(A) requires the that a party to a matter pending in federal court "must, without awaiting a discovery request, provide to the other parties":

> (I) the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment; [and]
>
> (ii) a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment . . .

Fed. R. Civ. P. 37(c)(1) provides the penalties for failing to comply with Fed. R. Civ. P. 26(a)(1), as follows:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

See *Taylor v. Teco Barge Line, Inc.*, 517 F.3d 372, 378-79 (6th Cir. 2008); *Sommer v. Davis*, 317 F.3d 686, 691-92 (6th Cir. 2003). The

2

rule "prevents a party from using as evidence any witnesses or information that, without substantial justification, has not been disclosed as required by Rules 26(a) and 26(e)(1)." Fed. R. Civ. P. 37, cmts. to 1993 amendments. Rule 37(c)(1) is intended to serve as "a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion, such as one under Rule 56." *Id.*

In the parties' joint Fed. R. Civ. P. 26(f) report [Record No. 10], the parties agreed that "Plaintiff will serve by September 1, 2007[,] the information required by Fed. R. Civ. P. 26(a)(1)." The Court understands that Chambers never served any of the information required by Fed. R. Civ. P. 26(a)(1) during the pendency of this matter to date, even after a letter from defense counsel to her counsel reminding him of the obligation and a phone call between counsel for Defendant and Plaintiff in which those disclosures were promised by Chambers' counsel to Defendant's counsel. Further, Plaintiff has failed to respond at all to the motion to strike, let alone offered "substantial justification" for her failure to abide by Fed. R. Civ. P. 26(a)(1).

As Plaintiff failed to disclose any potential witnesses, even herself, or the existence of any documentary or other evidence, including medical documents, as required by Fed. R. Civ. P. 26(a)(1)(A), the Court shall strike the exhibits consistent with

3

the provisions of Fed. R. Civ. P. 37 and will not consider them further.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. FACTUAL BACKGROUND

At the time of the incident which is the subject of this suit, Plaintiff Donna Chambers was a 54-years-old, female employee of an E.W. James grocery store in Richmond, Kentucky. [*See* Compl. ¶ 2.] When hired by E.W. James, some two years earlier, Chambers completed a series of "Pre-Interview Questions" in which she volunteered that she had "no health problems" in response to a question about whether there was anything that would prevent her from coming to work on time. [Record No. 15-3, Declaration of Janice Shipman (hereinafter, "Shipman Decl.") at ¶ 3, Ex. E.] At no time, in any employment documentation, other record, or in any way, did Chambers inform E. W. James that she suffered from any physical or mental impairment nor did she request accommodation for any impairment. [Shipman Decl. at ¶ 5, Ex. 2; Record No. 15-6, Declaration of Terry Dykes (hereinafter, "Dykes Decl.") at ¶ 2, Ex. 3; Record No. 15-7, Declaration of Steve Boone (hereinafter, "Boone Decl.") at ¶ 2.]

Additionally, upon hiring, Chambers received and acknowledged receipt of an Associate Handbook which provided for "the minimum guidelines for behavior" in customer relations. [Record Nos. 15-3 and 15-4, Shipman Decl. at ¶ 6, Ex. G and H.] Specifically, the

4

handbook provided that:

> . . . [t]he following misconduct may lead to corrective action up to and including termination. The severity of the action taken is related to the circumstances and the associate's record:
>
> . . .
>
> 3. Discourteous, intimidating or coercive behavior, even in jest towards other associates, customers, or vendors.
>
> . . .
>
> 19. Using obscene or abusive language.[1]

[Record No. 15-4, Shipman Decl. at Exh. G.] By signing the "Associate Acknowledgment Form" upon receipt of the handbook, Chambers acknowledged that she had received the handbook, that it was her responsibility to read and become familiar with the employment policies included therein, and that Chambers or E.W. James could "terminate the [employment] relationship at will, with or without cause, at any time, so long as there is no violation of applicable federal or state law." [Record No. 15-4, Shipman Decl. at Exh. H.]

On March 22, 2006, at approximately 6:00 p.m., Chambers left the photo lab area in the Richmond store and walked to the

---

[1] These requirements were echoed during a training program on "Customer Service" facilitated by Janice Shipman, Director of Human Resources, on February 17, 2005, which Chambers attended, and at which the need to treat everyone at E.W. James with "dignity and respect" was stressed. [Record Nos. 15-3 and 15-5, Shipman Decl. at ¶ 7, Ex. I.]

5

customer service counter. [Moore Decl. at ¶ 3; Boone Decl. at ¶ 3.] There, she encountered Paula Moore, assistant office manager, and Steve Boone, assistant store manager. [*Id.*] Chambers told Moore and Boone that she was "clocking out" for the day, and that someone needed to go over to the photo lab to assist a customer. [*Id.*] Boone left to address the customer need at the photo lab, and Chambers left the service area to "clock out." [*Id.*] Moore remained at the service counter to work with customers. [Moore Decl. at ¶ 3.]

Several minutes later, Chambers walked behind the service counter, grabbed a pack of cigarettes, and placed them on the counter next to Moore, who was helping a customer purchase lottery tickets. [Moore Decl. at ¶ 4.] Chambers asked Moore if she would "ring up" the cigarettes for her, and Moore told Chambers to wait "just a second" so that she could finish attending to the customer. [*Id.*] Chambers grabbed the cigarettes, called Moore a "fucking bitch," and went to another register. [*Id.*] The customer asked Moore, "What's wrong with her?," and Moore told the customer that she did not know but that she was sorry. [*Id.*] Moore did not acknowledge or respond to Chambers' outburst in any other way. [*Id.*]

On March 23, 2006, after the beginning of her shift, Chambers was called into a conference with Dykes, the store manager for the Richmond facility. [Dykes Decl. at ¶ 5.] When asked about the

6

outburst the day before, Chambers admitted that she had called Moore a "freaking bitch" and insisted that Moore had instigated the incident by ignoring her when Chambers asked Moore to "ring up" her cigarettes. [*Id.*] Dykes reminded Chambers that obscene and abusive language was not acceptable at E.W. James, and Chambers acknowledged that she "was wrong to say this to Paula [Moore]." [*Id.* at ¶ 5, Ex. A.] At Dykes' request, Chambers drafted and signed a statement regarding the incident. [*Id.*] At the conclusion of the meeting, Dykes suspended Chambers with pay for the rest of the day while he decided how to handle the incident. [*Id.*] Chambers "clocked out" and left the store. [*Id.*]

Later that day, Dykes spoke with Director of Human Resources Shipman via telephone. [Shipman Decl. at ¶ 8; Dykes Decl. at ¶ 6.] Dykes shared the information that he had learned in his conversations with Moore and Chambers and provided Shipman with written statements from Moore and Boone that corroborated this information. [Shipman Decl. at ¶¶ 8-9, Ex. A, B, and C; Dykes Decl. at ¶ 6, Ex. A, B, and C.] Dykes also sent a digital video clip of the incident to Shipman via intracompany mail [Shipman Decl. at ¶ 10, Ex. D; Dykes Decl. at ¶ 6, Ex. D.] While the video clip did not have an audio track, the visual component of the clip corroborated Moore's account of the incident. [*Id.*] Shipman considered the evidence and discussed the matter via telephone with Dykes and Jimmy Winchester, store supervisor for Kentucky, before

7

ultimately determining that Chambers had committed a terminable offense. [Shipman Decl. at ¶ 11.] This is the only time that Shipman has ever been presented with a situation in which an E.W. James employee admittedly used profanity in front of a customer. [*Id.*]

That night, Dykes completed a "Corrective Action/Counseling Form" for Chambers evidencing E.W. James' decision to terminate her employment, as follows:

> Donna on 3/23/06 at approximately 6:00 pm, you made derogatory comment to Paula Moore, in the presence of another customer. This is viewed as not showing dignity and respect to your coworkers and customers alike. We are in a people business, that [means] good proper conduct is required . . . Donna, after discussions with Human Resource[s] and Store Supervisor, the decision has been made to terminate your employment.

[Dykes Decl. at ¶ 8, Ex. E.]

On March 24, 2006, Chambers reported for work and was called into a conference with Dykes. [Dykes Decl. at ¶ 9.] Dykes notified Chambers that her employment was being terminated and shared with her the Corrective Action/Counseling Form that he had prepared. [*Id.*] Chambers did not agree with the decision, but she signed the Corrective Action/Counseling Form acknowledging that the decision had been discussed with her and that she had reviewed the document. [Dykes Decl. at ¶ 9, Ex. E.]

Chambers asked Dykes if she could draft a statement in response to the termination decision for inclusion in her employee

8

file, and Dykes agreed to let her do so. [Dykes Decl. at ¶ 9.] Chambers statement noted that (1) she had been off the clock at the time of the incident, (2) that she had only called Moore a "freaking bitch" after Moore "deliberately turned her back" on Chambers, (3) that this was not the first time that Moore had been rude to Chambers and members of the Chambers family, (4) that the incident took place at 6:15, not 6:00, and (5) that she had not been included in a conference call with human resources or a supervisor, as Dykes' explanation allegedly suggested.[2] [Dykes Decl. at ¶ 9, Ex. F.]

After Chambers' discharge, the duties of the photo lab manager position were taken on by an existing employee, Karen Dennis, a 44-year-old woman who continued to have responsibilities over the store's General Merchandise and Health and Beauty departments. [Shipman Decl. at ¶ 12.] No one was hired, transferred, promoted, or otherwise assigned to replace Chambers in the position of photo lab manager. [*Id.*]

Chambers filed a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter, "EEOC") on January

---

[2] The Court does note that Dykes' Corrective Action/Counseling Form states only that Dykes engaged in conversations with Human Resources and the Store Supervisor, not Chambers. As such, the Court agrees with E.W. James' assessment that Chambers' fifth point is an apparent error of comprehension as there is no evidence of Dykes' insinuation that Chambers had been directly involved in these consultations.

9

17, 2007, alleging for the first time that the termination of her employment was the result of discrimination against her on the basis of her sex, age, and a purported disability. [Shipman Decl. at ¶ 13, Ex. 13.]  The EEOC concluded that it could not determine that any violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, or the Americans with Disabilities Act took place, and dismissed the charge. [*Id.*]  On March 19, 2007, Chambers filed a complaint in Madison County Circuit Court, alleging violations of the Kentucky Civil Rights Act.  E.W. James removed the case to this Court on the basis of diversity jurisdiction.

**B.   APPLICABLE STANDARD OF REVIEW**

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."  The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party, which in this case is the plaintiff, "cannot rest on [her] pleadings," and must show the Court that "there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997).  In considering a motion for summary judgment the court must construe the facts in

the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### C. DISCUSSION

In the instant matter, Chambers claims that she was simultaneously the victim of sex, age, and disability discrimination in violation of the Kentucky Civil Rights Act. The Kentucky Civil Rights Act's discrimination provisions (including KRS 344.040 and 344.280) "track [ ] federal law and should be interpreted consonant with federal interpretation" of the analogous federal employment discrimination statutes. *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *see also Toyota Motor Mfg. Ky., Inc. v. Williams*, 534 U.S. 184, 190-91 (2002) (KCRA "is construed consistently with the ADA"); *Bryson v. Regis Corp.*, 489 F.3d 561, 571 (6th Cir. 2007) (KCRA disability provisions analogous to Americans with Disabilities Act); *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1250 (6th Cir. 1995) (KCRA prima facie case analogous to federal Title VII prima facie case); *Harker v. Federal Land Bank of Louisville*, 679 S.W.2d 226, 229-30 (Ky. 1984) (considering federal law in application of KCRA claim of age discrimination); *Tiller v. University of Kentucky*, 55 S.W.3d 846, 849 (Ky. Ct. App. 2001) (analyzing KCRA claim of sex discrimination under federal framework).

Thus, in order to state a prima facie case of sex, age, or disability discrimination, a plaintiff may present either direct

11

evidence of intentional discrimination or circumstantial evidence that creates an inference of discrimination. *Talley*, 61 F.3d at 1246. Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Chambers offers no direct evidence of sex, age, or disability discrimination and, instead, bases her claims on indirect inference.

Her claim is, thus, governed by the burden shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). If and only if she can make a prima facie case of discrimination, as set forth below, does the burden of production shift to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Once an employer sets forth a legitimate non-discriminatory reason, the burden shifts to the plaintiff to present evidence that the reason offered by the employer was false and that discrimination was the actual reason. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 516 (1993).

    **1.**    **Plaintiff Fails to Establish Prima Facie Case of Sex/Age Discrimination**

In order to establish a prima facie case of sex or age discrimination, Chambers must show (1) that she was a member of a

12

protected class, (2) that she suffered a materially adverse employment action, (3) that she was qualified for the position that she lost, and (4) that a similarly situated person outside of the protected class received treatment more favorable than her. *Gray v. Toshiba Am. Consumer Prods.*, 263 F.3d 595, 598-99 (6th Cir. 2001); *Harker*, 679 S.W.2d at 230.

Accepting that Plaintiff can demonstrate elements (1), (2), and (3) of the prima facie case for her claims of age and sex discrimination, her claim still fails as Chambers cannot demonstrate that a similarly situated person outside of her respective protected classes (female and over forty years of age) received more favorable treatment than her, i.e., was hired or not terminated by E.W. James.

When identifying similarly situated persons for purposes of an employment discrimination case, a plaintiff must demonstrate that the alleged "comparable" is "substantially similar to her in all relevant respects." *Gray*, 263 F.3d at 598-99. To be deemed "similarly situated," "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Gray*, 263 F.3d at 599.

Chambers has produced no evidence that Janice Shipman or

13

anyone else in management ever failed to terminate any other E.W. James employee – whether similarly situated to Chambers or not – who used profanity in front of a customer. Her sex and age discrimination claims must fail as she cannot set forth a prima facie case of same.

### 2. Plaintiff Fails to Establish Prima Facie Case of Disability Discrimination

To make a prima facie showing of disability discrimination, Chambers must demonstrate that:

> . . . (1) [s]he is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Macy v. Hopkins Co. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007).

An individual is considered "disabled" under the KCRA if:

> . . . she (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such an individual, (2) has a record of such impairment, or (3) is regarded by her employer as having such an impairment.

*Gruener v. Ohio Cas. Ins. Co.*, 510 F.3d 661, 664 (6th Cir. 2008).

### a. Disability or Perception of Disability

In the instant matter, Chambers alleges that she was discriminated against because of her "disability or perception fo disability" because she suffers from "debilitating leg cramps" as

14

a result of a surgery. [Compl. ¶¶ 7, 31.] Chambers has produced no admissible evidence of leg cramps or any other medical condition, beyond the bare allegation of her Complaint. Even assuming that she suffers from such a condition, she has offered no evidence, let alone a record, to demonstrate that the cramps rise to the level of an "impairment that substantially limits" one or more of her "major life activities." *See Toyota Motor Mfg. Co. Ky., Inc. v. Williams*, 534 U.S. 184, 193-96 (2002) (describing stringent standards used in applying statutory definition of "impairment . . . substantially limit[ing] one or more major life activities"). The evidence of record shows that Chambers was able to complete the essential tasks of her job without assistance and never requested any accommodation for work-related or personal, non-work-related tasks. [Shipman Declaration at ¶ 5; Dykes Declaration at ¶ 2; Boone Decl. at ¶ 2.]

An individual can be "regarded as" having a disability if (1) an employer is under the mistaken belief that an employee is disabled when, in fact, she is not or (2) the employee actually has an impairment that the employer knows about but the employer mistakenly believes that the employee is disabled because of the impairment when, in fact, she is not.[3] *Sutton v. United Air Lines,*

---

[3] Further, there is no evidence that her employer was aware of her alleged condition. She affirmatively represented to E.W. James upon initial employment that she had "no health problems." [Record No. 15-3, Shipman Decl. at ¶ 3, Ex. E.] No medical records or

15

*Inc.*, 527 U.S. 471, 489 (1999). In the instant matter, there is no evidence that anyone at E.W. James considered Chambers disabled in any way. As E.W. James had no belief, correct, mistaken, or otherwise, that Chambers was disabled, she was not "regarded as" having a disability.

In the absence of any proof that she is "disabled" under the KCRA, Plaintiff has failed to prove a prima facie case of disability discrimination.

### b. Replacement

Additionally, even if Chambers could demonstrate that she was disabled or perceived as disabled, there is no evidence that Chambers was "replaced" by a non-disabled employee. After the termination of Chambers' employment, the duties of photo lab manager were taken on by Karen Dennis, an existing employee who was already managing and continued to manage two other departments at the Richmond facility. "Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement" for the purposes of a prima facie case. *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992); *see also King v. Red Roof Inn*, No. 1:05-cv-124, 2006 WL 572710 at *6 (W.D. Mich. March 8, 2007) ("the Sixth Circuit uniformly holds that a plaintiff is not replaced when the work is redistributed among

---

medical absences suggest such a disability. [Shipman Decl. at 5, Dykes Decl. at 2.]

other existing employees already performing related work."). Again, she fails to establish a prima facie case of disability discrimination and her claim must fail.

**III. CONCLUSION**

For all of the reasons stated above, Defendant's Motion to Strike shall be granted, and Plaintiff Chambers' claims of sex, age, and disability discrimination under the Kentucky Civil Rights Act fail and shall be dismissed.

Accordingly, it is **ORDERED**:

(1) that Defendant's Motion to Strike Plaintiff's Exhibits Offered in Opposition to Summary Judgment [Record No. 23] shall be, and the same hereby is, **GRANTED**;

(2) that Defendant's Motion for Summary Judgment [Record No. 15] shall be, and the same hereby is, **GRANTED**.

This the 20th day of August, 2008.



Signed By:
*Joseph M. Hood*
**Senior U.S. District Judge**

17